IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 18, 2016 at Knoxville

**STATE OF TENNESSEE v. BRANDAN DANE WINDROW**

**Appeal from the Criminal Court for Davidson County**
**No. 2014-B-1221     Monte D. Watkins, Judge**

_____

**No. M2015-02094-CCA-R3-CD – Filed June 28, 2016**

_____

Following a jury trial, the Defendant, Brandan Dane Windrow, was convicted of aggravated assault involving the use or display of a deadly weapon, a Class C felony, and vandalism of property valued at $1,000 or more but less than $10,000, a Class D felony. See Tenn. Code Ann. §§ 39-13-102; -14-408; -11-105.  He received a total effective sentence of fourteen years to be served at thirty-five percent.  On appeal, he contends that the evidence was insufficient to prove that he acted intentionally or knowingly. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Cleveland D. Bain, Nashville, Tennessee, for the appellant, Brandan Dane Windrow.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Victor S. (Torry) Johnson III, District Attorney General; and Roger D. Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

The Defendant's convictions arose from a January 16, 2014 incident involving the victim, Kimberly Tennial.  Ms. Tennial was leaving her subdivision on her way to work at approximately 9:00 a.m. when she stopped to check her mail.  The neighborhood's mailbox area was located near the entrance to the subdivision and was accessible via a one-way semi-circular drive, delineated by a sidewalk on one side and a landscaped oval median on the other side.  Ms. Tennial parked her car between the two curbs, got out,

checked her mailbox, and returned to her car. When she got back into her car, there were no other vehicles in the area. She admitted that she was parked facing in the wrong direction of the one-way drive. Upon entering her car, she placed her mail in the passenger's seat and put her mailbox key back in the "cubbyhole" where she usually kept it. When she looked up, there was a vehicle parked directly in front of her, "front bumper to front bumper." She described the vehicle as a sport utility vehicle ("SUV") and said that because of the close proximity of the SUV, she could see directly into the vehicle and could clearly see the driver, a man, who was the car's only occupant. She identified the Defendant as the driver.

The Defendant "yelled out of his window," and Ms. Tennial "rolled [her] window down just a little bit." The Defendant asked for her help, explaining that he had moved into the neighborhood within the past two weeks and did not yet have his mailbox key. Ms. Tennial told him that she could not help him and advised him that he should speak to the homeowners' association. The Defendant asked to use her mailbox key, and she declined his request. Ms. Tennial then "put up [her] hand like wait a minute, as if [she] wanted to get out of his way." She placed her car in reverse and began backing up. Ms. Tennial said that because the drive was circular, she hit the curb several times and was taking her time to back out. According to Ms. Tennial, "every time [she] would go in reverse, [the Defendant] would push on the gas and come towards [her]." She again put her hands up, "like hold on a minute."

Ms. Tennial said that while attempting to back out, her car went up on the curb and onto the sidewalk, and the Defendant rammed into the back driver's side of her car, "right above the back wheel." She began yelling at him, saying, "[W]hat is wrong with you, what is your problem[?]" She said that she became very afraid. The Defendant exited his vehicle, and he lay down "in a shrubbery area right where the mailboxes [we]re" and said, "[L]ook, I'm hurt."

Ms. Tennial called 911 and drove her car back toward the interior of the neighborhood. The Defendant got back into his car and "started driving really erratically around [her] car like he wanted to hit [her] again." Ms. Tennial pulled in front of a neighbor's condominium, explaining that she did not return to her own home because she did not want the Defendant to know where she lived. Ms. Tennial parked her car in a parking space, and the Defendant backed his SUV into a parking spot located two spaces away from her, leaving one space in between their vehicles. The Defendant yelled that he needed her insurance information, and she yelled back, "[N]o, not until the police get here." He again asked for her information, and she gave him the same answer. According to Ms. Tennial, the Defendant began "yell[ing] expletives about the police . . . and then he sped off a little bit." She thought he was driving away, but the Defendant then "backed up and hit [her] car a second time[,] . . ." again striking the rear driver's side

-2-

of her car. One of Ms. Tennial's neighbors exited his home with a gun and "told [the Defendant] to stop." At that point, the Defendant "sped on out of the subdivision."

Ms. Tennial denied that the Defendant's actions were accidental, saying that the first time he hit her car she was "trapped" and attempting to back up her car. The second time the Defendant hit her, she was parked, and he "sped off" before putting his SUV in reverse and hitting her car.

Ms. Tennial said that, although her car was pointing in the wrong direction when she was parked near the mailboxes, people often went the wrong way through the drive when checking their mail while leaving the neighborhood. She said that the "common courtesy" was for anyone who wished to enter the drive from the proper direction to first allow the person already there to exit the area. She agreed that the semi-circular drive was short, and if two cars were there at the same time, they would necessarily be very close together.

Police officers arrived five to ten minutes after Ms. Tennial called 911, and she was able to provide them with the Defendant's license plate number. Detective Robert Shelton of the Metropolitan Nashville Police Department was assigned to investigate the incident. He used the license plate information to check the car's registration. The tag number matched a Ford Expedition owned by the Defendant. Det. Shelton then put together a photographic lineup, from which Ms. Tennial was able to identify the Defendant.

Ms. Tennial testified that the damage to her car totaled more than $1,000 but less than $10,000.

Upon this evidence, the jury convicted the Defendant of aggravated assault and vandalism. Following a sentencing hearing, the trial court imposed a sentence of eight years for the aggravated assault and six years for the vandalism, with the sentences set to run consecutively and to be served at thirty-five percent. This timely appeal followed.

ANALYSIS

On appeal, the Defendant challenges the sufficiency of the convicting evidence. In particular, the Defendant avers that there was insufficient evidence to prove that he acted intentionally or knowingly. The State disagrees.

First, we feel compelled to address the inadequacy of the Defendant's brief. The argument section of the Defendant's brief contains no citations to the record, and the only citations to authority are two references to the statutes pursuant to which the Defendant

was convicted.[1]  And, although the Defendant alleges that the State failed to prove the requisite mental states, he provides no citation to the statutes containing the definitions for "intentional" and "knowing."  Rule of Appellate Procedure 27(a) states that an appellant's brief "shall contain . . . [a]n argument . . . setting forth . . . the contentions of the appellant with respect to the issues presented . . . including the reasons why the contentions require appellate relief, <u>with citations to the authorities and appropriate references to the record</u> . . . ."  (Emphasis added).  The rules of this court dictate that "issues which are not supported by . . . citation to authorities, or appropriate references to the record will be treated as waived in this court."  Tenn. Ct. Crim. App. R. 10(b).  The inadequacies of the Defendant's brief make his challenge to the sufficiency of the evidence suitable for waiver.  However, waiver notwithstanding, we choose to address the merits of the Defendant's appeal.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).  This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State.  <u>See</u> <u>State v. Sheffield</u>, 676 S.W.2d 542, 547 (Tenn. 1984); <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978).  Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury.  <u>See</u> <u>State v. Bland</u>, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict."  <u>Bland</u>, 958 S.W.2d at 659; <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982).  A guilty verdict "may not be based solely upon conjecture, guess, speculation, or a mere possibility."  <u>State v. Cooper</u>, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987).  However, "[t]here is no requirement that the State's proof be uncontroverted or perfect."  <u>State v. Williams</u>, 657, S.W.2d 405, 410 (Tenn. 1983).  Put another way, the State is not burdened with "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt."  <u>Jackson</u>, 443 U.S. at 326.

The following standard "applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence."  <u>State v. Pendergrass</u>, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).  Our supreme

---

[1] The Defendant makes one additional citation to authority: after asserting that the victim was guilty of fleeing the scene of an accident, he cites to the relevant statute for that crime.

court has held that circumstantial evidence is as probative as direct evidence. State v. Dorantes, 331 S.W.3d 370, 379-81 (Tenn. 2011). In doing so, the supreme court rejected the previous standard which "required the State to prove facts and circumstances so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." Id. at 380 (quoting State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971)) (quotation marks omitted).

Instead, "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Dorantes, 331 S.W.3d at 381. The reason for this is because with both direct and circumstantial evidence, "a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference . . . ." Id. at 380 (quoting Holland v. United States, 348 U.S. 121, 140 (1954)). To that end, the duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

The Defendant was convicted of aggravated assault and vandalism. As relevant here, "[a] person commits aggravated assault who . . . [i]ntentionally or knowingly commits an assault as defined in [section] 39-13-101, and the assault . . . involves the use or display of a deadly weapon . . . ." Tenn. Code Ann. § 39-13-102(a)(1)(A)(iii). "A person commits assault who . . . [i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury . . . ." Tenn. Code Ann. § 39-13-101(a)(2). Further, the indictment specified that the deadly weapon in this case was a motor vehicle. See State v. Tate, 912 S.W.2d 785, 788 (Tenn. 1995) (holding that an aggravated assault conviction may be supported by the State's proving that a motor vehicle was knowingly or intentionally used to cause another person to reasonably fear imminent bodily injury). "A person commits the offense of vandalism who knowingly . . . [c]auses damage to or the destruction of any real or personal property of another . . . knowing that the person does not have the owner's effective consent . . . ." Tenn. Code Ann. § 39-14-408.[2]

A person acts intentionally "when it is the person's conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-302(a). A person acts knowingly with respect "to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist" and "with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b).

---

[2] In his brief, the Defendant incorrectly states that the vandalism statute requires a defendant to act intentionally.

The Defendant characterizes the first collision with Ms. Tennial's car as accidental, asserting that he was intending to exit the drive, not hit Ms. Tennial's car. He points out that Ms. Tennial had entered the drive in the wrong direction. The Defendant seemingly believes that this excuses his subsequent behavior. He further argues that Ms. Tennial's testimony alone was not sufficient to prove that he hit her car a second time. We disagree.

The evidence at trial showed that the Defendant first encountered Ms. Tennial while she was parked near the mailboxes in her subdivision. He parked his SUV "front bumper to front bumper" with Ms. Tennial's car. Ms. Tennial had admittedly entered the one-way drive and parked in the wrong direction. After refusing to allow the Defendant to borrow her mailbox key, Ms. Tennial signaled to the Defendant that she was going to back out of the drive. Rather than waiting for her to back out, the Defendant inched closer to her each time she progressed backward. Finally, when Ms. Tennial's car hit the curb and went up onto the sidewalk, the Defendant "rammed" his SUV into her car. Ms. Tennial said that she was very afraid.

After the Defendant exited his SUV, claimed that he was injured, and lay down in the grass, Ms. Tennial called 911 and finished backing out of the drive. She drove to a neighbor's condominium, where she parked her car to wait for the police. The Defendant followed her, backed into a parking space two spots away from her, and requested her insurance information. When Ms. Tennial told the Defendant that he would have to wait for the police, he "yelled expletives" about the police. He then began to drive away before placing his car in reverse and again ramming his SUV into Ms. Tennial's car. Ms. Tennial testified that the damage to her car totaled over $1,000. Accordingly, there was ample evidence from which the jury could infer that the Defendant intentionally used his motor vehicle in a way that caused Ms. Tennial to reasonably fear imminent bodily harm. There was likewise sufficient evidence that he knowingly caused damage to her vehicle. The jury obviously accredited Ms. Tennial's testimony, as was its prerogative. The Defendant is not entitled to relief.

## CONCLUSION

Based upon the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-6-